23073. HENDERSON v. STATE BOARD OF EXAMINERS IN OPTOMETRY.

ARGUED SEPTEMBER 13, 1965—DECIDED NOVEMBER 4, 1965—REHEARING DENIED NOVEMBER 16, 1965.

538

*Edenfield, Heyman & Sizemore, Newell Edenfield, Joseph Lefkoff, Parker, Clary & Kent, Horace T. Clary,* for plaintiff in error.

*Eugene Cook, Arthur K. Bolton, Attorneys General, Paul Hanes, Assistant Attorney General, William B. Gunter, Deputy Assistant Attorney General,* contra.

QUILLIAN, Justice. ■ The bill of exceptions assigns as error the overruling of ground 1 of the respondent's demurrer: that the petition fails to set forth a cause of action for attachment in contempt. This court held in *Pearle Optical v. State Board,* 219 Ga. 364 (133 SE2d 374), that the trial court decree was valid. The decree, among other things, required: "the individual defendant James Perry Henderson, as a practicing li-

censed optometrist, shall conform to and comply with the reasonable rules and regulations adopted and promulgated by the Georgia State Board of Examiners in Optometry governing the practice of optometry pursuant to the laws of Georgia." The petition sufficiently alleged the respondent in disobedience to the decree carried on the practice of optometry in violation of Rule F (11), Rule F (14) and Rule I of the board.

Courts have inherent power to enforce their decrees. See *Code* §§ 24-105, 24-2615 and 37-1208. We think the petition set forth cause for contempt against the respondent.

■ The bill of exceptions assigns the overruling of ground 4 of the respondent's demurrer to the application for attachment for contempt as error. The ground alleges "that Rule I of the rules and regulations adopted by the State Board is unreasonable, invalid and unconstitutional for the reason that it is in contravention of" the due process provision of the Georgia Constitution. Art. I, Sec. I, Par. III (*Code Ann.* § 2-103). Respondent contends Rule I contravenes and is in violation of the constitutional provision "because it is too vague and indefinite to provide an understanding of the conduct which it seeks to prohibit." Rule I reads: "All optometrists licensed by the Board to practice optometry in the State of Georgia are prohibited from doing any of the acts of highly unprofessional conduct which are set forth in Rule F of these rules; and the doing of any of said prohibited acts by a licensed optometrist shall be a violation of Rule F and this rule." The provisions of the rule attacked are plain and explicit. The ground is without merit.

■ The final assignment of error is that the judgment holding the respondent in contempt was not supported by the evidence. There was evidence that the establishment where the respondent practiced optometry was operated under the name "Pearle Optical." Indeed, in his communication to the Secretary of State, the respondent unequivocally stated: "Name of Business: Pearle Optical." His own testimony was, in response to the question, "You have filled out name of business there, where it says Pearle Optical; Is that correct or incorrect?": "Well, that is the name of the place where I do refractions."

The alleged owner of the business, one Wall, whose name was not disclosed in any of the newspaper advertising of the business, certified to the Secretary of State that the business was operated under the name "Dr. R. C. Wall d/b/a Pearle Optical." The advertisements offered contact lenses and glasses at stated prices, which included the refractions or examinations made by the optometrist working at the place of business. According to the evidence, the respondent made no separate charge for his professional services but such cost was included in the price of the lenses or glasses. There was evidence that a little sign bearing the letters, "Dr. James P. Henderson, Optometrist," appeared in the window of the Pearle Optical place of business, but there was still the large "Pearle Optical" sign on the window, and signs in the window advertising "Contact Lens, One Price Only, $75." There was likewise a small sign at the door of the room where the respondent did refractions, or examinations, similar to the one in the window, upon which his name appeared, also inside the room the only signs appearing upon the wall were the respondent's diploma, his licenses and class picture. However, his wife testified that when a patient came in and said, "I saw your advertisement and I want some glasses," she referred the patient to the refractory room of Dr. Henderson; and that the described conditions were the same before as after September 1, 1964. We think the evidence submitted upon the trial was sufficient to support the conclusion that the respondent was practicing in violation of Rule F (11) which proscribes as highly unprofessional conduct "the practice of optometry under any name other than his or her own proper name and the name used in the practice of optometry shall be the same name as used in his or her license or certificate issued by the Board," and hence was violating the previous decree of the trial court, affirmed by this court in *Pearle Optical v. State Board,* 219 Ga. 364, supra.

We have considered the fact that the small sign was in the window bearing his name; that he wore the name plate with his name on the same; and that on a desk adjacent to the refraction room where he worked was displayed a sign reading: "Dr. James Henderson, Optometrist." In view of the facts above related,

however, and particularly that he admitted the establishment conducted its business under the name "Pearle Optical," and it clearly appearing from the fact that Pearle Optical was advertising glasses and lenses at "one price only," which necessarily included the examination and fitting of the glasses, that the signs referring to the respondent as an optometrist had only the effect of holding him out to the public as an optometrist practicing under the "Pearle Optical" name and performing the services for the concern that it afforded to its customers along with and as a part of the costs of lenses and glasses sold by it.

We are also cognizant that the respondent's wife testified: "Q. Mrs. Henderson, I'll ask you whether or not any time anyone comes in and asks for any particular person that they want to see in the Pearle Optical place? A. Yes, sir. Q. And who did they ask for? A. Dr. Henderson." But she also testified that when a patient came in and said, "I saw your advertisement and I want some glasses," that she "referred them back to the refractory room to Dr. Henderson." The part of her testimony first quoted really showed no more than that the people who came in were aware Dr. Henderson worked for Pearle Optical and was an integral part of that concern's enterprise in furnishing lenses or glasses and the services of a licensed optometrist at one stated price. But clearly her other testimony was that when Pearle Optical customers came in off the street and just wished to buy glasses or lenses as advertised by Pearle Optical, they were referred to Dr. Henderson to render that part of the services to be accomplished by Pearle Optical. There being evidence from which the trial judge, as the trior of fact, could find Henderson violated Rule F (11) and the court's previous decree requiring the respondent to obey the reasonable rules of the board, his judgment can not be disturbed.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents, and Mobley, J., not participating for providential cause. Cook, J., disqualified.*